UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

GONZALO BARBOSA SALGADO,      )
                              )    2:  12-cv-01334-PK
          Petitioner,         )
                              )
     v.                       )
                              )    FINDINGS AND RECOMMENDATION
RICK COURSEY,                 )
                              )
          Respondent.         )

Tonia L. Morrow
Attorney at Law PC
19 South Orange Street
Medford, Oregon   97501

     Attorney for Petitioner

Ellen F. Rosenblum
Attorney General
Nicholas M. Kallstrom
Assistant Attorney General
Department of Justice
1162 Court Street NE
Salem, Oregon 97301

     Attorneys for Respondent

PAPAK, Magistrate Judge.


1 - FINDINGS AND RECOMMENDATION

Petitioner Gonzalo Barbosa Salgado brings this habeas corpus action pursuant to 28 U.S.C. § 2254 and challenges his convictions and sentence for kidnapping and murder. For the reasons set forth below, the Petition for Writ of Habeas Corpus [3] should be denied, and Judgment should be entered dismissing this action with prejudice.

## FACTUAL BACKGROUND

On May 8, 2005, Salgado attempted to recover for an associate of his what he understood to be stolen property from Robert Dausel for an associate of his. Salgado and a friend, Michael Briles, went to the apartment in Springfield, Oregon where Salgado believed Dausel was then residing. After waiting a couple of hours, and Salgado having recovered some of the stolen property, Dausel finally arrived at the apartment. Apparently with the purpose of going to another residence to recover the remaining property, Dausel willingly left with Salgado and Briles in a Toyota driven by seventeen-year-old Heidi Prim. Prim's friend, sixteen-year-old Stephanie Metz, sat in the front passenger seat and the three men sat in the back: Briles behind the driver, Dausel in the middle and Salgado behind Metz. Shortly after Prim pulled away from the curb at the apartment, Salgado caused an object (likely a retractable metal baton or asp) to penetrate Dausel's eye and push through to the back of his brain. Blood splattered throughout the back of the car and everyone began yelling. Salgado directed Prim

2 - FINDINGS AND RECOMMENDATION

to pull over in an alleyway a few blocks away. There, Salgado pulled Dausel out of the car and left him on the ground in the alley. Though Prim and Metz had told Salgado to get out of the car, he climbed back in and directed Prim to drive him to Glenwood. She complied with this instruction. On the way to Glenwood, Salgado told Prim to pull over and he exited the vehicle. Later that day, a couple discovered Dausel in the alley and summoned medical help. Dausel never regained consciousness and died some five weeks later.

## PROCEDURAL BACKGROUND

On June 21, 2005, the Lane County Grand Jury returned a superseding indictment charging Salgado with one count of Murder and two counts of Kidnapping in the Second Degree. Respondent's Exhibit 103. Following a jury trial, Salgado was convicted on all counts and the sentencing court imposed two consecutive 70-month sentences on the kidnapping counts and life with a minimum 25 year sentence without the possibility of parole, to be served consecutively to the second kidnapping sentence, on the murder. Respondent's Exhibit 101.

Salgado directly appealed his conviction and sentence, but the Oregon Court of Appeals affirmed the trial court without a written opinion. *State v. Barbosa-Salgado*, 219 Or. App. 181, 181 P.3d 790 (2008). Salgado sought review from the Oregon Supreme Court and

3 - FINDINGS AND RECOMMENDATION

was, ultimately, denied review. *State v. Barbosa-Salgado*, 345 Or. 94, 189 P.3d 749 (2008); Respondent's Exhibits 104-108.

Salgado next filed for post-conviction relief ("PCR") in state court. The PCR trial court denied relief on his PCR Petition. *Barbosa-Salgado v. Coursey*, Umatilla County Circuit Court Case No. CV090037. On appeal, the Oregon Court of Appeals affirmed without written opinion, and the Oregon Supreme Court denied review. *Barbosa-Salgado v. Coursey*, 246 Or. App. 576, 266 P.3d 669 (2011), *rev. denied* 351 Or. 675, 276 P.3d 1123 (2012); Respondent's Exhibits 126-130.

On July 23, 2012, Salgado filed this action. His claims for relief as set forth in his Petition [3] are as follows:

- A. The court erred by denying defendant's motion for judgment of acquittal on the kidnapping charge in Count 3.

- B. Petitioner alleges that he was denied effective assistance of trial counsel in violation of Article 1, Section 11 of the Oregon Constitution and the 6th Amendment of the U.S. Constitution, made applicable to the states by the 14th Amendment to the United States Constitution and *Strickland v. Washington*, 466 U.S. 668, 687, 80 L.Ed.2d 674, 104 S.Ct. 2052 (1984) in the following manner:

    - a. Trial counsel was ineffective in failing to object to testimony describing Petitioner's tattoos and to the admission of photographs of Petitioner's tattoos.

    - b. Trial counsel was ineffective in failing to investigate and present all evidence and witnesses in support of the defense.

    - c. Trial counsel was ineffective in failing to adequately argue that this was not an intentional

      murder and to present all evidence supporting that defense.

  d. Trial counsel was ineffective in failing to object and/or move for a mistrial based on State's witnesses communicating in the courthouse together prior to giving their testimony.

  e. Trial counsel was ineffective in failing to object to the exclusion of minorities from the jury.

  f. Trial counsel was ineffective in failing to move for a Judgment of Acquittal in regards to counts 2 and 3 based on the lack of intent to substantially interfere with another's liberty.

Respondent asks the Court to deny relief on the Petition because: (1) Claim A is procedurally defaulted and is otherwise without merit; (2) with the exception of Salgado's claim that trial counsel was ineffective for failing to object to testimony identifying Salgado by the distinctive "Fuck the World" tattoo on the back of his head (a subpart of Claim B(a)), Claims B(a-f) are procedurally defaulted; and (3) Salgado's exhausted ineffective assistance of trial counsel claim involving the tattoo was denied in a state court decision entitled to deference.

## DISCUSSION

### I. Exhaustion and Procedural Default

#### A. Standards.

A habeas petitioner must exhaust his claims by presenting them to the state's highest court, either through a direct appeal or collateral proceedings, before a federal court will consider the merits of those claims. *Rose v. Lundy*, 455 U.S. 509, 519 (1982).

5 - FINDINGS AND RECOMMENDATION

"As a general rule, a petitioner satisfies the exhaustion requirement by fairly presenting the federal claim to the appropriate state courts . . . in the manner required by the state courts, thereby 'affording the state courts a meaningful opportunity to consider allegations of legal error.'" *Casey v. Moore*, 386 F.3d 896, 915-916 (9th Cir. 2004) (quoting *Vasquez v. Hillery*, 474 U.S. 254, 257, (1986)). If a habeas litigant failed to present his claims to the state courts in a procedural context in which the merits of the claims were considered, the claims have not been fairly presented to the state courts and are therefore not eligible for federal habeas corpus review. *Castille v. Peoples*, 489 U.S. 346, 351 (1989).

When a state prisoner fails to exhaust his federal claims in state court and the state court would now find the claims barred under applicable state rules, the federal claims are procedurally defaulted. *Casey*, 386 F.3d at 920; *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991). Similarly, if a federal constitutional claim is expressly rejected by a state court on the basis of a state procedural rule that is independent of the federal question and adequate to support the judgment, the claim is procedurally defaulted. *Coleman*, 501 U.S. at 750; *Cook v. Schriro*, 538 F.3d 1000, 1025 (2008), *cert. denied*, 129 S.Ct. 1033 (2009).

If a petitioner has procedurally defaulted a claim in state court, a federal court will not review the claim unless the

6 – FINDINGS AND RECOMMENDATION

petitioner shows "cause and prejudice" for the failure to present the constitutional issue to the state court, or makes a colorable showing of actual innocence. *Gray v. Netherland*, 518 U.S. 152, 162 (1996); *Sawyer v. Whitley*, 505 U.S. 333, 337 (1992); *Murray v. Carrier*, 477 U.S. 478, 485 (1986).

### B.  Analysis

For the reasons set forth below, the Court concludes that Salgado cannot prevail on the merits of Claim A. Accordingly, the Court will bypass the issue of procedural default pertaining to this claim. *See Lambrix v. Singletary*, 520 U.S. 518, 524-25 (1997)(federal habeas court may bypass question of procedural default to deny claim on merits); 28 U.S.C. § 2254(b)(2)("An application for writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.").

With regard to Salgado's ineffective assistance of trial counsel claims set forth in Claims B(a-f), the Court notes that on appeal from the PCR court's denial of relief, Salgado raised one claim:

> The post-conviction court erred in denying relief where petitioner established that his trial counsel failed to object to a description of a tattoo on petitioner's neck.

Respondent's Exhibit 126 at 2. It is therefore apparent that beyond this one discreet claim, Salgado failed to fairly present any of the remaining ineffective assistance of counsel claims to

7 - FINDINGS AND RECOMMENDATION

the Oregon Courts in a procedural context in which their merit would be considered, and they are now procedurally defaulted. Salgado does not attempt to demonstrate cause and prejudice or to show actual innocence to excuse such default.

## II. Merits

### A. Standards

An application for writ of habeas corpus shall not be granted unless adjudication of the claim in state court resulted in a decision that was: (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). A state court's findings of fact are presumed correct and Salgado bears the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

A state court decision is "contrary to . . . clearly established precedent if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [that] precedent." Williams v. Taylor, 529 U.S. 362, 405-06 (2000). Under the "unreasonable application" clause, a federal habeas court

8 - FINDINGS AND RECOMMENDATION

may grant relief "if the state court identifies the correct legal principle from [the Supreme Court's] decisions, but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. The "unreasonable application" clause requires the state court decision to be more than incorrect or erroneous. *Id.* at 410. The state court's application of clearly established law must be objectively unreasonable. *Id.* at 409.

The Supreme Court has established a two-part test to determine whether a petitioner has received ineffective assistance of counsel. First, the petitioner must show that his lawyer's performance fell below an objective standard of reasonableness. *Strickland v. Washington*, 466 U.S. 668, 686-687 (1984). Due to the difficulties in evaluating counsel's performance, courts must indulge a strong presumption that the conduct falls within the "wide range of reasonable professional assistance." *Id.* at 689.

Second, the petitioner must show that his lawyer's performance prejudiced the defense. The appropriate test for prejudice is whether the defendant can show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A reasonable probability is one which is sufficient to undermine confidence in the outcome of the trial. *Id.* at 696.

9 - FINDINGS AND RECOMMENDATION

B.  **Analysis**

  1.  **Trial Court Error in Denying Salgado's Motion for Judgment of Acquittal on the Kidnapping Charge Related to Metz Because the State Failed to Present Sufficient Evidence That Salgado Intended to Substantially Interfere with Her Liberty (Claim A)**

Salgado contends that in view of the fact that Metz did not testify: (1) that she felt frightened or compelled to go along as a passenger in the car from Springfield to Glenwood; (2) that anything prevented her from getting out of the car when it was stopped in the alleyway; and (3) that her "place" or location in the front passenger seat of the car ever changed, the State failed to present sufficient evidence from which a trier of fact could infer that Salgado intended to substantially interfere with her liberty.[1] To the contrary, Salgado maintains that at most her presence in the car was merely incidental to his menacing or kidnapping of Prim, the driver. Brief in Support [34], p. 19.

*Jackson v. Virginia*, 443 U.S. 307 (1979) governs this sufficiency of the evidence issue. In reviewing a conviction under this standard, a court must determine whether the evidence, examined in the light most favorable to the prosecution, would allow any rational trier of fact to have found the essential elements of the crime beyond a reasonable doubt. *Id.* at 318. When

---

[1] O.R.S. § 163.225(1) provides in pertinent part that "[a] person commits the crime of kidnapping in the second degree, if, with intent to interfere substantially with another's personal liberty, and without consent or legal authority, the person. . .[t]akes the person from one place to another."

10 - FINDINGS AND RECOMMENDATION

the record supports conflicting inferences, courts presume the jury resolved the conflicts in favor of the prosecution. *Id.* at 326.

Evidence before the trial court at the time it denied Salgado's Motion for Judgment of Acquittal on the kidnapping charge pertaining to Metz included the following:

- Metz was a 16-year-old girl at the time of the kidnapping;

- Just prior to the kidnapping, Metz was present when Salgado fatally injured another passenger, pulled him out of the car and left him on the ground in an alley;

- Metz knew Salgado had a weapon;

- Prim and Metz "freaked out" and were yelling and screaming after Salgado injured Dausel;

- Prim and Metz told Salgado to get out of the car, but he did not comply;

- Salgado was giving orders, including orders directing Prim to pull into the alleyway, to drive him to Glenwood, and to pull over to let him out;

- Metz did not want to go to Glenwood or anywhere else with Salgado;

- When Salgado exited the vehicle he told Prim and Metz to "keep [their] mouths shut and he'll make things right."; and

- Metz was afraid.[2]

---

[2] Metz testimony at trial included the following:

A.   * * *

   We just pulled away from the curb, like not even 30 feet, and I heard a -- like a pop, like a crack sound. And I never -- I didn't see it. And then everyone just started freaking out. There was like -- everybody was yelling. And I looked back and I saw just blood everywhere. Just everywhere. I immediately started crying. And --

11 - FINDINGS AND RECOMMENDATION

Respondent's Exhibit 103, Trial Transcript, pp. 301-10.

At trial, the following brief arguments were made pertaining to Salgado's motion for judgments of acquittal on the kidnapping counts:

> MR. KOENIG: Thank you, Your Honor. Your Honor, the Defense would move at the close of the State's case for judgments of acquittal in regards to Count 2 and Count 3 of this offense.
>
> The elements of that offense, as the Court knows from the jury instructions, require that the State prove an intent to substantially interfere with another person's liberty and that be done by means of some threat, force, or other inducements.
>
> I would argue that under the light -- the evidence taken in the light most favorable to the State, there's inadequate evidence to submit Count 2 and Count 3 to the jury on the issue of, specifically, substantial interference with a person's liberty.
>
> THE COURT: Mr. Hasselman.
>
> MR. HASSELMAN: I submit to the Court that based on the testimony of those witnesses under the circumstances, in fact both named victims indicating that they did not want to go where defendant directed them to go, that there is sufficient evidence for the trier of fact to make that conclusion.
>
> THE COURT: Motions denied.

Id. at 551-52.

Having carefully reviewed the record as it relates to Salgado's Motion for Judgment of Acquittal on the kidnaping count

---

> Q. Why were you crying?
>
> A. Because I was scared.

Respondent's Exhibit 103, Transcript of Proceedings, p. 304.

12 - FINDINGS AND RECOMMENDATION

pertaining to Metz, the Court is satisfied that there was sufficient evidence from which a reasonable fact finder could conclude that Metz was frightened and felt compelled to go to Glenwood against her will and that the prosecution had proved beyond a reasonable doubt that Salgado intended to substantially interfere with Metz's liberty when he directed Prim to drive him from Springfield to Glenwood. Sixteen-year-old Metz witnessed Salgado commit a seemingly unprovoked violent assault on another passenger, leave him for dead in an alley, and then admonish her to stay silent about the incident. Accordingly, Salgado's argument that Metz's "movement" was merely incidental to his kidnapping or menacing of Prim notwithstanding, he cannot demonstrate on this record that the trial court's denial of his motion for judgment of acquittal on the second degree kidnapping count pertaining to Metz, was contrary to, or involved an unreasonable application of *Jackson v. Virginia*.

>    B. **Ineffective Assistance of Trial Counsel for Failing to Properly Object to the State's Elicitation of Inadmissible Character Evidence Via Testimony Describing Salgado's "Fuck the World" Tattoo (Part of Claim B(a))**

Salgado argues that trial counsel could have anticipated that the prosecutor would try to admit the "highly prejudicial irrelevant evidence describing his tattoo" and therefore should have moved for its exclusion outside the presence of the jury. Brief in Support [34] at 25. He contends that while the tattoo

13 - FINDINGS AND RECOMMENDATION

might have been visible to those sitting behind him or to some potential jurors during voir dire, the record indicates that the jury did not see the tattoo. *Id.* In addition, Salgado maintains that but for counsel's failure to object to the testimony describing his tattoo, there is a reasonable probability that the outcome of his trial would have been different. This is the case, he argues, because the evidence supporting the State's theory came from a fellow inmate who testified that he did not think that Salgado's admission to him about having intentionally pushed the baton into Dausel's face was true, but rather that Salgado was just trying to act tough. *Id.* at 26. Thus, according to Salgado, given this less than overwhelming evidence of his intent, admission of the tattoo character evidence influenced the jury's verdict and he should receive a new trial. *Id.* at 26-27. Finally, Salgado argues that because the PCR court erroneously found that the jury had seen the tattoo, no deference is due that court's denial of the subject ineffective assistance of counsel claim.

In response, respondent argues that the PCR court reasonably concluded that because Salgado shaved his head prior to trial exposing the tattoo and because the evidence of his guilt was overwhelming, testimony by a witness identifying Salgado by the distinct tattoo on the back of his head did not change the outcome of the trial. Response [20] at 16.[3]

---

[3] The Court notes that there is some discrepancy in the record as to whether the subject tattoo was on the back of

14 - FINDINGS AND RECOMMENDATION

In resolving this claim, the PCR court made the following relevant findings of fact and conclusions of law:

### FINDINGS OF FACT

\* \* \*

3. At the time of the trial, petitioner shaved his head, which made his tattoo visible. He failed to prove that he was prejudiced because of the jury viewing photographs of his tattoos.

\* \* \*

### CONCLUSIONS OF LAW

3. Petitioner did not prove the facts underlying any of his post-conviction claims by a preponderance of evidence. Thus petitioner has not shown, as required by *Strickland*, (1) that counsel's representation fell below an objective standard of reasonableness, and (2) that there is a reasonable probability that, but for counsel's allegedly unprofessional errors, the result of the proceedings would have been different. . . .

Respondent's Exhibit 124, pp. 2-3.

In reaching this conclusion, the PCR court had before it trial counsel's affidavit wherein counsel averred as follows:

\* \* \*

2. Re: *failure to object to testimony describing petitioner's tattoos, and photographs thereof*. I did not notice[ ] petitioner's head tattoo before trial, probably because his hair was longer. Just before trial, the

---

Salgado's neck or the back of his head/skull. In his PCR deposition, Salgado stated that "[o]n my back of my head I have a tattoo that says 'Fuck the world.'" Respondent's Exhibit 121, p. 6. Regardless of whether it was on the back of his neck or head, the record supports the fact that prior to Salgado shaving his head shortly before trial, the tattoo was not easily noticed. Respondent's Exhibit 114, pp. 1-2.

15 - FINDINGS AND RECOMMENDATION

> petitioner shaved his head so that everyone could see the tattoo on the back of his skull. This was actually pointed out to me by the Judge. Petitioner seemed not the least concerned about the tattoos.
>
> I do not remember any problems or issues relating to tattoo photographs. It apparently made no difference to petitioner, who was sitting at counsel table displaying his message for everyone in the courtroom. Prior to jury being impaneled, I had spent considerable time explaining to him how important his courtroom demeanor would be.

Respondent's Exhibit 114, pp. 1-2.

The Court has carefully reviewed the record. As respondent correctly notes, Salgado's trial counsel successfully objected to the admission of photographs depicting the tattoo on the back of Salgado's head. Respondent's Exhibit 103, Transcript of Proceedings, pp. 214-17. Accordingly, the PCR court's factual finding that Salgado failed to prove that he was prejudiced because *the jury viewed photographs of his tattoos* is based on an erroneous premise. In fact, the jury never saw photographs of Salgado's tattoos. Rather, they heard testimony from a Mr. Molaski who was present at the apartment when Salgado came to retrieve the stolen property and who witnessed Dausel leave with Salgado and Briles. Molaski testified that he identified Salgado for the assigned detective as follows:

> [t]he tattoo on the back of his neck was really the only clear indicator. I mean clear way of telling who he was. * * * If I'm not mistaken, it's a tattoo that says -- excuse my language -- "Fuck the world."

The prosecutor then showed Molaski a photo of the tattoo and confirmed it was the tattoo he recognized from the back of

16 - FINDINGS AND RECOMMENDATION

Salgado's head. When the prosecutor sought to offer this exhibit, however, counsel made his successful objection. *Id.*

Salgado's inference that no juror saw the subject tattoo notwithstanding, the record reveals that: (1) the tattoo was mentioned without objection during voir dire;[4] (2) the Judge noticed the tattoo; (3) prior to Salgado shaving his head, the tattoo was not easily noticed; and (4) counsel successfully objected to the admission of photographs of the tattoo. While the PCR court did mistakenly state that the jurors had seen photos of the tattoo, its underlying rational for determining that Salgado had failed to prove he was prejudiced by introduction of evidence concerning the tattoo remains sound. On this record, Salgado cannot meet his burden of refuting by clear and convincing evidence the PCR court's core factual finding, *i.e.*, that given Salgado chose to shave his head on the eve of trial making his tattoo visible, he cannot demonstrate prejudice based on his attorney's failure to object to Molaski's testimony concerning the tattoo.

Based on the foregoing, the Court concludes that Salgado has failed to demonstrate that the PCR court's denial of relief on this claim was contrary to or an unreasonable application of *Strickland*

---

[4] Salgado's trial counsel stated that he "thought it was inappropriate when counsel asked one of the juror members early on about the tattoo he'd seen. [But that he] did not object at that point, because [he] thought it would simply draw more attention." *Id.* at 217.

17 - FINDINGS AND RECOMMENDATION

*v. Washington* or that it was based on an unreasonable determination of the relevant facts presented at trial.

## RECOMMENDATION

Based on the foregoing, the Petition for Writ of Habeas Corpus [3] should be DENIED, and judgment should enter DISMISSING this case with prejudice.

In addition, the district judge should certify that Salgado has not made a substantial showing of the denial of a constitutional right pursuant to 28 U.S.C. § 2253(c)(2). This case is not appropriate for appellate review.

## SCHEDULING ORDER

The Findings and Recommendations will be referred to a district judge. Objections, if any, are due fourteen (14) days from service of the Findings and Recommendation. If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

If objections are filed, then a response is due fourteen (14) days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

## NOTICE

A party's failure to timely file objections to any of these findings will be considered a waiver of that party's right to *de novo* consideration of the factual issues addressed herein and

will constitute a waiver of the party's right to review of the findings of fact in any order or judgment entered by a district judge. These Findings and Recommendation are not immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure should not be filed until entry of judgment.

DATED this 25th day of March, 2014.

/s/ Paul Papak
Paul Papak
United States Magistrate Judge